IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| LARRY SLEDGE,  ) | Case No. 1:20-cv-40 |
| ) | |
| Plaintiff  ) | |
| ) | UNITED STATES MAGISTRATE JUDGE |
| v.  ) | RICHARD A. LANZILLO |
| ) | |
| ERIE COUNTY PRISON, et al.,  ) | |
| ) | MEMORANDUM OPINION AND |
| Defendants  ) | ORDER |

I.      Introduction

Plaintiff Larry Sledge, an inmate incarcerated at the Erie County Prison, initiated this *pro se* civil rights action by filing a Motion for Leave to Proceed in forma pauperis on February 19, 2020.  ECF No. 1.  The Court granted Sledge's motion and directed service of his Complaint on July 8, 2020.  ECF No. 9.

In his Complaint, Sledge, a pre-trial detainee, asserts that each of the Defendants – Deputy Warden Michael Holman, Lieutenant Jason Stevens, Lieutenant Mark Lindsay, and the Erie County Prison – violated his rights as secured by the Eighth and Fourteenth Amendments to the United States Constitution.[1]  ECF No. 10.  Sledge seeks compensatory and punitive damages pursuant to 42 U.S.C. § 1983.  *Id.*

Presently pending is Defendants' motion to dismiss for failure to state a claim [ECF No. 24].  Defendants have filed a brief in support of their motion [ECF No. 25], and Sledge has filed

---

[1] Although Sledge also mentions the First Amendment in his Complaint, none of his factual allegations suggest that he is seeking relief pursuant to that Amendment.

a response in opposition[2] [ECF No. 27].  As such, this matter is fully briefed and ripe for disposition.[3]

II.     Factual Background

The following allegations from Sledge's complaint are accepted as true for purposes of this motion.  Sledge avers that on February 8, 2020, he and six other inmates refused to return their food trays after lunch to protest "a food shortage by the food service dept."  ECF No. 1-1 at 1.  Plaintiff received a misconduct and was "put on a special food loaf meal for 3 days."  *Id*. None of the other six inmates involved was placed on the same restriction.  *Id*.

On February 12, 2020, Sledge and the other inmates attended a disciplinary hearing.  *Id*. While Sledge received a sanction of 30 days in the Restricted Housing Unit (RHU) for his role in the food tray incident, the other six inmates received only three days in the RHU.  *Id*.  Sledge filed the instant lawsuit seven days later.

III.    Standard of Review

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint.  *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993).  In deciding a motion to dismiss, the court is not opining on whether the plaintiff will be likely to prevail on the merits; rather, the plaintiff must only present factual allegations sufficient "to raise a right to relief above the speculative level."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (citing 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1216, pp. 235-236 (3d ed. 2004)).  *See also Ashcroft v. Iqbal*, 556 U.S. 662 (2009)).  A complaint should only be dismissed

---

[2] As will be discussed below, Sledge has also filed a Proposed Amended Complaint.  *See* ECF No. 28.

[3] The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge to conduct all proceedings in this case, including the entry of final judgment, as authorized by 28 U.S.C. § 636.

pursuant to Rule 12 (b)(6) if it fails to allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570 (rejecting the traditional 12 (b)(6) standard established in *Conley v. Gibson*, 355 U.S. 41 (1957)).  In making this determination, the court must accept as true all well-pled factual allegations in the complaint and views them in a light most favorable to the plaintiff.  *U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002).

While a complaint does not need detailed factual allegations to survive a motion to dismiss, a complaint must provide more than labels and conclusions.  *Twombly*, 550 U.S. at 555. A "formulaic recitation of the elements of a cause of action will not do."  *Id.* (citing *Papasan v. Allain,* 478 U.S. 265, 286 (1986)).  Moreover, a court need not accept inferences drawn by a plaintiff if they are unsupported by the facts as set forth in the complaint.  *See California Pub. Employee Ret. Sys. v. The Chubb Corp.*, 394 F.3d 126, 143 (3d Cir. 2004) (citing *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997)).  Nor must the Court accept legal conclusions disguised as factual allegations.  *Twombly*, 550 U.S. at 555 (citing *Papasan*, 478 U.S.  at 286).  *See also McTernan v. City of York, Pennsylvania*, 577 F.3d 521, 531 (3d Cir. 2009) ("The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").

Expounding on the *Twombly/Iqbal* line of cases, the Third Circuit has articulated the following three-step approach:

> First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'  Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.'  Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'

*Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011) (quoting *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010)).  This determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

 Finally, because Plaintiff is proceeding pro se, the allegations in the complaint must be held to "less stringent standards than formal pleadings drafted by lawyers."  *Haines v. Kerner*, 404 U.S. 519, 520-521 (1972).  If the court can reasonably read a pro se litigant's pleadings to state a valid claim upon which relief could be granted, it should do so despite the litigant's failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or unfamiliarity with pleading requirements.  *Boag v. MacDougall*, 454 U.S. 364 (1982); *United States ex rel. Montgomery v. Bierley*, 141 F.2d 552, 555 (3d Cir. 1969) (petition prepared by a prisoner may be inartfully drawn and should be read "with a measure of tolerance").

IV.    Analysis

Sledge asserts two claims: (1) a cruel and unusual punishment claim based on receiving a "food loaf" instead of an ordinary prison meal; and (2) an equal protection claim based on the disparate punishments that he received relative to his fellow inmates following the February 8 incident.  Defendants maintain that Sledge never exhausted his administrative remedies and that his Complaint fails to state a claim for relief.  Each of these claims and defenses will be addressed in turn.

1.    Exhaustion

Defendants first contend that Sledge has failed to administratively exhaust any of his claims.  In broad brush, the Prison Litigation Reform Act of 1995, 42 U.S.C. § 1997e(a) (the

"PLRA"), requires a prisoner to exhaust any available administrative remedies before he may bring an action pursuant to 42 U.S.C. § 1983 challenging the conditions of his confinement.  42 U.S.C. § 1997e(a).  This exhaustion requirement applies to all claims relating to prison life which do not implicate the duration of the prisoner's sentence.  *Porter v. Nussle*, 534 U.S. 516, 532 (2002).  Further, the statute requires "proper exhaustion," meaning that a prisoner's completion of the administrative review process must also satisfy the applicable procedural rules of the prison's grievance system.  *Fennell v. Cambria County Prison*, 607 Fed. Appx. 145, 149 (3d Cir. 2015).  Failure to exhaust administrative remedies under the PLRA is an affirmative defense that must be pleaded and proven by defendants.  *Ray v. Kertes*, 285 F.3d 287, 295 (3d Cir. 2002).

The grievance system utilized by the Erie County Prison requires an inmate to file a written grievance within fifteen days after the complained-of event.  *See Baxter v. Social Security Administration, 2018 WL 1256741, at \*4 (W.D. Pa. Mar. 12, 2018).*  Prison officials must make an initial decision on the written grievance within 20 days, and a dissatisfied inmate may, in turn, appeal to the Warden within five working days of receiving the initial decision.  *Id.*  The Warden must decide the appeal and reply to the inmate within ten working days.  *Id.*

As a threshold matter, the timing of Sledge's allegations reveals that, at a minimum, he failed to properly exhaust his claims prior to initiating this action.  The date stamp on the envelope used to mail Sledge's Complaint indicates that he placed his Complaint in the mail on February 17, 2021, only five days after his misconduct hearing.  *See* ECF No. 1-3.  Per his own averments, Sledge did not appeal his misconduct sanction until February 18, 2020, and did not receive his initial review response until February 24, 2020.  ECF No. 27 at 2-3.  Each of these events took place <u>after</u> Sledge had already filed his Complaint with the Clerk of Courts.  *See*

ECF No. 1.  Because exhaustion is a prerequisite to filing suit in federal court, this deficiency would ordinarily require that this action be dismissed, without prejudice, so that Sledge could fully exhaust his remedies.  *See, e.g., Washington-El v. Beard*, 562 Fed. Appx. 61, 64 (3d Cir. 2014) ("inmates must exhaust their administrative remedies before filing a suit") (emphasis added); *Hensley v. Trempus*, 2019 WL 2412490, at *2 (W.D. Pa. Apr. 17, 2019) (dismissing claims for failure to exhaust where plaintiff indicated that he was still pursuing his administrative remedies at the time he filed suit); 42 U.S.C. § 1997(e)(a) ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner, confined in any jail, prison or correctional facility until such administrative remedies as are available are exhausted.") (emphasis added).

In the instant case, however, Sledge concedes that he never pursued his administrative remedies beyond filing his initial misconduct appeal.  *See* ECF No. 27 at 3.  He maintains that this was because "counselor Heather Martin" refused to provide him with the forms to appeal his initial review response and threatened to keep him in the RHU if he continued to pursue his grievance.  *Id*.  The Court of Appeals for the Third Circuit has acknowledged that, under certain narrow circumstances, the actions of prison officials may render the administrative review process unavailable to an inmate.  *Brown v. Croak*, 312 F.3d 109, 112-13 (3d Cir. 2002).  *See also Williamson v. Roberts*, 2013 WL 967693, at *4 (W.D. Pa. Mar. 12, 2013) ("[A]n inmate's failure to exhaust will only be excused under certain limited circumstances.") (quoting source omitted).  One such circumstance is where prison officials directly cause the procedural default of a grievance through machination, misrepresentation, or intimidation.  *See Woodford v. Ngo*, 548 U.S. 81, 102 (2005); *Williamson*, 2013 WL 967693, at *4 (noting that an inmate's failure to

exhaust will only be excused where "he was misled" or where "some extraordinary reason" prevented him from complying with the statutory mandate).

By invoking Martin's threats and refusal to provide an appeal form, Sledge appears to argue that his failure to exhaust should be excused because his administrative remedies were unavailable. Such a contention raises factual issues that must ordinarily be resolved by way of an evidentiary hearing pursuant to *Small v. Camden County*, 728 F.3d 265 (3d Cir. 2013). Here, however, it is apparent from Sledge's allegations that he cannot state a claim upon which relief can be granted. Accordingly, rather than conduct a *Smalls* hearing, the Court will proceed to address Defendants' alternative argument that Sledge's claims are facially deficient and incurable by amendment.

  2.  State actor requirement

In attacking the facial validity of Sledge's Complaint, Defendants first assert that any claims against the Erie County Prison must be dismissed because a prison is not a "person" subject to suit under § 1983. The Court agrees. "In the Third Circuit, it is well-settled that a prison or correctional facility is not a 'person' that is subject to suit under federal civil rights laws." *Regan v. Upper Darby Twp.*, 2009 WL 650384 (E.D. Pa. 2009), *aff'd* 363 Fed. Appx. 917 (3d Cir. 2010) (listing cases). Accordingly, Sledge's claims against the prison must be dismissed, with prejudice. *See*, *e.g.*, *Lenhart v. Pennsylvania*, 528 Fed. Appx. 111, 114 (3d Cir. 2013)) (concluding that district court properly dismissed claims against county prison because even though "[a] local governmental agency may be a 'person' for purposes of § 1983 liability, [the county prison] is not a person capable of being sued within the meaning of § 1983") (internal citations omitted); *Mincy v. Deparlos*, 497 Fed. Appx. 234, 239 (3d Cir. 2012) (per

curiam) (county prison is not "person" within meaning of § 1983); *Scutella v. Erie Cty. Prison*, 2020 WL 4904587, at *6 (W.D. Pa. Aug. 20, 2020) (same).

3.      Lack of Personal Involvement

In order to prevail on a claim pursuant to 42 U.S.C. § 1983, a plaintiff must prove that a defendant, acting under color of state law, deprived the plaintiff of a right secured by the Constitution or laws of the United States. *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1141 (3d Cir. 1995); *Estate of Smith v. Marasco*, 430 F.3d 140, 151 (3d Cir. 2005); 42 U.S.C. § 1983. Moreover, the plaintiff "must show that each and every defendant was 'personal[ly] involve[d]' in depriving him of his rights." *Kirk v. Roan*, 2006 WL 2645154, at *3 (M.D. Pa. 2006) (quoting *Evancho v. Fischer*, 423 F.3d 347, 353 (3d Cir. 2006)). This means that each defendant must have played an "affirmative part" in the complained-of misconduct. *Iqbal*, 556 U.S. at 677 ("In a § 1983 suit ... [a]bsent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct."); *Oliver v. Beard*, 358 Fed. Appx. 297, 300 (3d Cir. 2009). In the absence of specific allegations that a defendant played a role in depriving the plaintiff of a constitutional right, dismissal is appropriate. *See*, *e.g.*, *Mearin v. Swartz*, 951 F.Supp.2d 776, 781-82 (W.D. Pa. 2013) (dismissing claims pursuant to Rule 12(b)(6) because the plaintiffs had failed to set forth sufficient facts to establish that certain defendants had played an affirmative part in the alleged Eighth Amendment violation).

These principles apply with equal force where the defendants are supervising prison officials. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998) (noting that liability for supervisory officials must still be based on "personal involvement in the alleged wrongs"). Although a supervisor cannot encourage constitutional violations, "a supervising public official has [no] affirmative constitutional duty to supervise and discipline so as to prevent violations of

constitutional rights by his or her subordinates." *Chinchello v. Fenton*, 805 F.2d 126, 133 (3d Cir. 1986); *Brown v. Grabowski*, 922 F.2d 1097, 1120 (3d Cir. 1990).  Nor can Section 1983 liability be predicated solely on the theory of respondeat superior.  *See*, *e.g.*, *Rizzo v. Goode*, 423 U.S. 362 (1976); *Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1293-95 (3d Cir. 1997).

Based on these principles, the Court concludes that Sledge has failed to state a claim for relief against Holman.  The Complaint does not attribute any conduct to Holman, let alone allege that he played an "affirmative part" in the complained-of misconduct.  In the absence of any facts suggesting personal involvement in the deprivation of a constitutional right, Holman must be dismissed from this action.

4.     Cruel and unusual punishment

Sledge asserts that Defendants violated his Eighth Amendment right to be free from cruel and unusual punishment by giving him a food loaf for three days instead of the ordinary prison meal.  It appears, however, that Sledge was a pretrial detainee at the time that this sanction was imposed.  As such, his claim is properly analyzed under the Due Process Clause of the Fourteenth Amendment rather than the Eighth Amendment.  *See, e.g., Bistrian v. Levi*, 696 F.3d 352, 372-74 (3d Cir. 2012) ("[P]retrial detainees have federally protected liberty interests that are different in kind from those of sentenced inmates.") (internal quotations omitted); *Waldron v. Wetzel*, 2020 WL 3084082, at *4 (W.D. Pa. June 10, 2020) ("[B]ecause Plaintiff was a pretrial detainee, his claims must be made and addressed under the Fourteenth Amendment's due process clause, not the Eighth Amendment's cruel and unusual punishments clause.").

Under the Due Process Clause, a detainee may not be punished "for the 'underlying crime of which he stands accused'" prior to an adjudication of guilt in accordance with due process of law.  *Kanu v. Lindsey*, 739 Fed. Appx. 111, 116 (3d Cir. 2018) (quoting *Rapier v.

*Harris*, 172 F.3d 999, 1003-06 (7th Cir. 1999)); *Bell v. Wolfish*, 441 U.S. 520, 534-36 (1979). However, "[o]nly conditions of confinement that 'cause [detainees] to endure genuine privations and hardship over an extended period of time' violate due process." *Thomas v. City of Phila*., 2021 WL 1614411, at *3 (E.D. Pa. Apr. 23, 2021) (quoting *Bell*, 441 U.S. at 542). Moreover, "prisons may sanction a pretrial detainee for misconduct that he commits while awaiting trial, as long as it is not a punishment for the underlying crime of which he stands accused." *Kanu*, 739 Fed. Appx. at 116 (internal quotations omitted). This is because "maintaining institutional security and preserving internal order and discipline are essential goals that may require limitation or retraction of the retained constitutional rights of both convicted prisoners and pretrial detainees." *Bell*, 441 U.S. at 546.

In the instant case, Sledge's contention that the prison violated his constitutional rights by forcing him to eat a food loaf for three days misses the mark. While the Fourteenth Amendment "guarantees pretrial detainees a nutritionally adequate diet," *Tapp v. Proto*, 718 F. Supp. 2d 598, 621 (E.D. Pa.), *aff'd*, 404 Fed. Appx. 563 (3d Cir. 2010), it is well-established that inmates have no constitutional right to be served a particular type of meal. *See Sears v. Mooney*, 2019 WL 6726839, at *11 (M.D. Pa. Dec. 11, 2019) (citing *Burgin v. Nix*, 899 F.2d 733, 734-35 (8th Cir. 1990)). Thus, "placing a prisoner on a food loaf diet for a limited period of time" has been found not to support a viable constitutional violation. *Wilson v. Wetzel*, 2013 WL 4812497, at *6 (M.D. Pa. Sept. 9, 2013). *See also Banks v. Meck*, 2013 WL 1101135, at *4 (W.D. Pa. Jan. 31, 2013) (collecting cases for the proposition that subjecting inmates to a food loaf diet for as long as fourteen days does not violate the constitution). Indeed, even missing a meal entirely does not rise to the level of a constitutional violation, especially when there is no allegation that the detainee suffered any harm from that deprivation. *See Lindsey v. O'Connor*, 327 Fed. Appx.

319, 321 (3d Cir. 2009) ("The purported deprivation of a single meal is not of such magnitude as to rise to the level of a constitutional violation").

Furthermore, to the extent that Sledge's food loaf diet represented a "sanction," his Complaint clearly demonstrates that this sanction was imposed because "[Sledge] and six inmates refused to give back [their] meal trays after lunch."  ECF No. 10 ¶ 3.  Sledge's allegations make clear that any sanction he received stemmed directly from his refusal to obey prison rules rather than the underlying crime of which he stood accused.[4]  As such, he has failed to state a claim.

     5.    Equal protection

To establish a violation of the Equal Protection Clause, a plaintiff must ordinarily allege "that he was treated differently than other similarly situated inmates, and that this different treatment was the result of intentional discrimination based on his membership in a protected class." *Mack v. Warden Loretto FCI*, 839 F.3d 286 (3d Cir 2016) (citing *Hassan v. City of New York*, 804 F.3d 277, 294 (3d Cir. 2015)).  It is axiomatic, however, that neither "prisoners" nor "inmates at the Erie County Prison" are a protected class.  *See*, *e.g.*, *Myrie v. Commissioner, N.J. Dep't of Corr.*, 267 F.3d 251, 263 (3d Cir. 2001).  Nor has Sledge supplied any facts suggesting that he received a harsher sentence than his fellow inmates because of his race, religion, or other prohibited consideration.  Each of these deficiencies is fatal to his claim.

To the extent that Sledge may be attempting to proceed under a "class of one" equal protection theory, he must establish that: "he was treated differently than others similarly situated as a result of intentional or purposeful discrimination . . . [and] that his treatment was not 'reasonably related to [any] legitimate penological interests.'" *Brayboy v. Johnson*, 2018 WL

---

[4] Sledge also concedes that he received a prompt disciplinary hearing.  ECF No. 10 ¶ 4.

6018863, at *11 (E.D. Pa. Nov. 16, 2018) (quoting *Holland v. Taylor*, 604 F. Supp. 2d 692, 701 (D. Del. 2009)).  In the specific context of prison discipline, this means that he must "demonstrate disparities in punishment that are not reasonable related to legitimate state interests."  *Rhodes v. Robinson*, 612 F.2d 766, 775 (3d Cir. 1979).

Although he received a harsher punishment than the other inmates involved in the February 8 incident, Sledge has again failed to plead facts suggesting that this disparity stemmed from intentional or purposeful discrimination.  To the contrary, it appears that Sledge received a more severe punishment because "[he] was the one that was leading the Pod to violate Policy" and "[was] also the only Inmate to not bring their tray to the hatch when told to."  ECF No. 24-14 at 5.[5]  Sledge has not pleaded any facts to overcome this legitimate penological explanation. *See*, *e.g.*, *Rhodes*, 612 F.2d at 775 ("Because the punishment handed down in any case of prisoner misconduct is determined on the basis of the facts of the particular case, the equal protection clause cannot require exact uniformity in degrees of punishment.").  As such, his equal protection claim must be dismissed.

V.      Leave to Amend

The Third Circuit has instructed that if a civil rights complaint is vulnerable to dismissal for failure to state a claim, the Court should permit a curative amendment, unless an amendment would be inequitable or futile.  *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002).  This instruction is equally applicable to *pro se* litigants and those represented by counsel. *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004).

---

[5] Courts may consider "indisputably authentic" documents referenced in the Complaint, such as "documents related to [an inmate's] grievances," without converting a motion to dismiss to a motion for summary judgment.  *Rinaldi v. United States*, 904 F.3d 257, 261 n. 1 (3d Cir. 2018).

In this case, Sledge has already submitted a Proposed Amended Complaint in response to Defendants' Motions to Dismiss.  That submission does not cure any of the deficiencies identified by the Defendants in their motion; indeed, Sledge had not alleged any additional facts in support of his original claims.  *See* ECF No. 28.  Instead, he seeks to add two additional claims: an excessive force claim against a non-Defendant based on an incident that occurred on January 4, 2020, and a retaliation claim against unidentified individuals based on events that occurred several months after he filed his original Complaint.  *Id.*

Because his proposed amendment was not submitted within 21 days of the filing of Defendants' Rule 12(b)(6) motion, Sledge is not entitled to an automatic amendment as of right pursuant to Federal Rule of Civil Procedure 15(a)(1)(B); rather, he must seek leave for his proposed amendment.  See Fed. R. Civ. P. 15(a)(2).  Leave to amend should be freely given "unless an amendment would be inequitable or futile."  *Massey v. Crady*, 2018 WL 4328002, at *11 (W.D. Pa. Aug. 8, 2018) (citing Fed. R. Civ. P. 15).

In this case, Sledge's proposed amendment is clearly futile.  Because he has not added any new facts in support of his original claims, those claims remain subject to dismissal for the reasons outlined in this opinion (including, *inter alia*, exhaustion, lack of personal involvement, and failure to state a claim).  Moreover, because he has already had an opportunity to attempt to cure the deficiencies identified in Defendants' motion to dismiss, further amendment would be similarly futile. *Baker v. Moon Area Sch. Dist*., 2018 WL 40571719, at *8 (W.D. Pa. Aug. 27, 2018) ("[T]he court need not provide endless opportunities for amendment, especially where such opportunity already has been enjoyed.")  (internal quotations and sources omitted); *Houser v. Donahoe*, 2013 WL 6838699, at *6 (W.D. Pa. Dec. 27, 2013) ("[I]t . . . would be inequitable to require Defendant[s], who already once [have] exhaustively and successfully defended

Plaintiff's grievances, to respond to a continuous stream of formal and informal attempted amendments.").

As to the new claims raised in Sledge's proposed amendment, the Court can discern no connection between those incidents and the event described in Sledge's original Complaint. Neither incident appears to involve any of the Defendants in this action or bears any relationship to the food tray incident that occurred on February 8.  Despite this Circuit's "liberal approach to the amendment of pleadings," *Dole v. Arco Chem. Co*., 921 F.2d 484, 486-87 (3d Cir. 1990), courts have consistently rejected proposed amendments or supplements that raise unrelated claims in an effort to avoid the statutory filing fee required to initiate a new lawsuit.  *See*, *e.g*., *Talbert v. Carney*, 2019 WL 5106523, at *6 (E.D. Pa. Oct. 10, 2019) (collecting cases).  Such is the case here.  To the extent that Sledge wishes to challenge the prison's use of force on January 4, 2020, or the retaliation that he allegedly experienced months later, he must do so by filing a new lawsuit in a timely manner.

VI.    Conclusion

For the reasons stated herein, Defendants' motion to dismiss [ECF No. 24] is GRANTED, and further leave to amend is denied as futile.  The Clerk is directed to mark this case closed.

RICHARD A. LANZILLO
United States Magistrate Judge

Dated:  May 24, 2021